UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 17-cr-245-01-01 |
| -vs- | JUDGE DRELL |
| CRISTINA DANIELA SANTOS (01) | MAGISTRATE JUDGE PEREZ-MONTES |

## RULING AND ORDER

Before the court is a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) filed *pro se* by defendant Cristina Daniela Santos ("Santos" or "Defendant"). (Doc. 557). Subsequently, Santos supplemented her motion with identical letters filed into the record. (Docs. 559, 560). The government has not responded to Santos' motion. Having carefully reviewed the record in this case, as well as relevant law and jurisprudence, the court has determined that the motion will be DENIED for the reasons fully explained below.

I. LAW

Motions for sentence reduction under Section 3582(c)(1)(A), most often referred to as "compassionate release" motions, may be filed at the inmate's request, by the Bureau of Prisons ("BOP"), or by the inmate individually after exhaustion of administrative remedies. The First Step Act amended § 3582(c) to provide an inmate an avenue to file a compassionate release motion on the inmate's own behalf after being denied relief by the BOP. Prior to the First Step Act, an inmate's only avenue to compassionate release was through the filing of a motion on the inmate's behalf by

the BOP. <u>United States v. Cantu</u>, 423 F.Supp.3d 345, 347 (S.D. Tex. 2019). After the First Step Act, the Fifth Circuit has made clear that exhaustion of all administrative rights of appeal is a mandatory claim–processing rule. <u>United States v. Franco</u>, 973 F.3d 465, 468 (5th Cir. 2020). Section 3582(c)(1)(A) provides that prisoners may: (1) file a motion with the court after fully exhausting all administrative rights to appeal the BOP's decision not to file a motion for compassionate release, or (2) file a motion with the court after requesting release when there has been a lapse of thirty (30) or more days from the receipt of such request by the warden of the defendant's facility, whichever is earlier. In each instance, the court will consider the inmate's administrative remedies fully exhausted. 18 U.S.C. §3582(c)(1)(A).

After exhaustion of remedies, the "[p]risoner[ ] ... must show 'extraordinary reasons'; ... show that compassionate release is consistent with applicable policy statements from the Commission; and ... convince the district judge to exercise discretion to grant the motion after considering the [18 U.S.C.] § 3553(a) factors." <u>United States v. Shkambi</u>, 993 F.3d 388, 392 (5th Cir. 2021).

U.S.S.G. § 1B1.13, although not binding, is the pertinent policy statement and is informative of reasons sufficiently "extraordinary." Compare <u>Shkambi</u>, 993 F.3d at 393 ("neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582.") with <u>United States v. Rivas</u>, 833 F. App'x 556, 558 (5th Cir. 2020) ("Though not dispositive, we are guided in our analysis by the commentary for § 1B1.13, which considers..."), and <u>United States v. Thompson</u>, 984 F.3d 431, 433 (5th Cir. 2021), cert. denied sub nom. <u>Thompson v.</u>

United States, No. 20-7832, 2021 WL 2044647 (U.S. May 24, 2021) ("Although not dispositive, the commentary to [§ 1B1.13] informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release.") (citing Rivas 833 F.App'x at 558).

U.S.S.G. § 1B1.13 also calls for consideration that the defendant is not a danger to another or the community providing 18 U.S.C. § 3142(g) as an analytical guide. Accordingly, § 3142(g) is informative and, also, considered. The § 3142(g) factors and §3553(a) factors are similar and discussed *en masse*.

## II. ANALYSIS

### a. Exhaustion

Santos submitted into the record the Warden's decision to not file a motion for compassionate release on Santos behalf. (Doc. 577-1). Accordingly, we find that the mandatory claim–processing rule has been satisfied. Franco, 973 F.3d at 468.

### b. Extraordinary and Compelling

Santos claims extraordinary and compelling reasons exist because Santos fears that her diagnosis of asthma, depression and anxiety may result in severe illness or death from COVID–19. In addition to the undocumented nature of Santos' diagnoses, it is uncertain that she is predisposed to COVID–19 in any manner that is "extraordinary" as compared to the "usual" predisposition experienced by the general inmate population. Thompson, 984 F.3d at 434.

In Thompson, the Fifth Circuit reasoned that …

> it is uncertain that [Thompson] is at a significantly higher risk than is the general inmate population. In fact, nearly half of the adult

population in the United States suffers from hypertension. And roughly 12% of Americans suffer from high cholesterol. Thus, we cannot say that either of those conditions makes Thompson's case "extraordinary." Unfortunately, both are commonplace.

Id. (footnote citations omitted). At the onset, we note that the CDC does not recognize either depression or anxiety as increasing the likelihood of severe illness from COVID–19.[1] The remaining condition Santos alleges, asthma, affects over eight (8) percent of the United States population within Santos' age bracket.[2] Asthma, as well as many medical diagnoses acknowledged by the CDC as increasing the likelihood of severe illness from COVID–19, similarly predisposed swaths of the United States inmate population by similar percentages. Santos does not assert or otherwise support a finding that her asthma predisposes her to severe illness from COVID–19 in any manner that is extraordinary or significantly higher than the general inmate population having any one or more condition listed by the CDC as increasing the likelihood of severe illness. Any increase she faces does not make her condition "terminal," and Santos does not assert or otherwise support a finding of diminished ability to provide self–care. U.S.S.G. § 1B1.13 cmt. n.1(A). Nor does she assert or otherwise support a finding of trouble effectively managing her asthma.

Accordingly, we do not find that Santos' circumstance rises to the level of "extraordinary" as beyond what the general inmate population is usually subjected

---

[1] People with Certain Medical Conditions, Centers for Disease Control and Prevention, last viewed June 17, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last updated May 13, 2021.
[2] Most Recent National Asthma Data, Centers for Disease Control and Prevention, last viewed June 17, 2021, https://www.cdc.gov/asthma/most_recent_national_asthma_data.htm, last updated March 30, 2021

to in the context of the COVID–19 pandemic. Although the ubiquitous nature of the pandemic has given rise to extraordinary times, our common experience of fear is not extraordinary. Cf. Thompson, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."). Santos' fear of severe illness from COVID–19 is shared by many, incarcerated or otherwise, and is, therefore, "commonplace." Id.

### c. § 3142(g) and § 3553(a) Factors

In the fall of 2015, Louisiana State Police Alexandria and Winn Parish Sheriff's Office began investigating a drug trafficking organization in Winnfield, Louisiana. PSR ¶ 12. The investigation revealed that Santos, residing in California, organized the distribution of methamphetamine originating in Mexico into Winnfield, Louisiana. PSR ¶¶ 15–45. According to the government, no methamphetamine was found to have a purity level less than ninety four (94) percent and the defendant is accountable for distributing approximately two hundred and seven (207) ounces of said methamphetamine over the course of two years. PSR ¶¶ 45–47. See 18 U.S.C. § 3553(a)(1) ("the nature and circumstances of the offense"); Id. at (a)(2)(A) ("the need for the sentence imposed to reflect the seriousness of the offense"); 18 U.S.C. § 3142(g)(1) ("the nature and circumstances of the offense charged").

Santos claims that she does not have a criminal history other than the instant offence. However, Santos perpetrated the instant offense over the course of two years. In that time, Santos had ample opportunity to refrain from further perpetration. Moreover, the fact that Santos was moving large volumes of methamphetamine across the country when the investigation started suggests a history of perpetrating the crime for which she is presently incarcerated. One normally does not lead a life

of innocence then suddenly facilitate the distribution of pounds of methamphetamine across state and international borders. Accordingly, while Santos does not have a criminal record, we are hard pressed to believe that she does not have a history of criminal perpetration in relation to the crime for which she is presently incarcerated. See 18 U.S.C. § 3553(a)(1) ("the nature and circumstances of the offense and the history and characteristics of the defendant"); 18 U.S.C. § 3142(g)(1) ("the nature and circumstances of the offense charged"); Id. at (g)(3)(A) ("past conduct").

Santos was sentenced to serve one hundred and thirty months incarcerated. Presently, Santos has served less than half of that sentence. See Thompson, 984 F.3d at 434–35, ("The courts that granted compassionate release on [the bases of health concerns] largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns.") (compiling cases); 18 U.S.C. § 3553(a)(2) ("the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant").

Even if we were willing to find that Santos presents extraordinary and compelling circumstances, the § 3553(a) and §3142(g) factors do not weigh in favor of release.

### III. Conclusion

For the reasons enumerated above, it is hereby ORDERED that Defendant's motion for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A) is DENIED.

THUS DONE AND SIGNED at Alexandria, Louisiana this 21st day of June 2021.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT